UNITED STATES of America

v.

Dennis E. PRYBA, et al.

Crim. No. 87–00208–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Nov. 3, 1987.

See also, 674 F.Supp. 1502 and 674 F.Supp. 1518.

---

Lawrence Leiser, Asst. U.S. Atty., Alexandria, Va., for U.S.

Thomas J. Morris, Jr., Arlington, Va., for Dennis E. Pryba.

William B. Cummings, Alexandria, Va., for Barbara A. Pryba.

Plato Cacheris, Washington, D.C., for Jennifer G. Williams.

J. Frederick Sinclair, Alexandria, Va., for Educational Books, Inc.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Introduction

This twelve count RICO-obscenity prosecution is the latest chapter in the continuing First Amendment-pornography saga.[1]

---

1. *See generally* F. Schauer, The Law of Obsceni-　ty (1976).

The new twist here is the use of RICO,[2] indeed apparently the first federal prosecutorial use of RICO against purveyors of allegedly obscene materials.[3] Until 1984, federal prosecutors targeting smut had an arsenal limited chiefly to 18 U.S.C. §§ 1461 *et seq.* Then, in 1984, Congress expanded RICO to cover obscene materials. It did so based on a concern that organized crime was contributing to and profiting from an "explosion in the volume and availability of pornography in our society."[4] As a result, federal prosecutors may now use RICO's stiffer penalties and forfeiture provisions[5] against sellers and distributors of allegedly obscene materials. This case is just such an attempted prosecution and this Memo-randum considers and decides several dispositive threshold motions made by defendants.

*Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), are perhaps the most important of the earlier chapters in the First Amendment-pornography saga. *Roth* made unmistakably clear that obscenity was not constitutionally protected speech and provided a standard by which to discern obscenity, namely whether the average person,[6] applying contemporary community standards,[7] would find that the work, taken as a whole, appeals to the prurient interest.[8] This test predictably

---

2. Racketeer Influenced & Corrupt Organizations Act, 18 U.S.C. §§ 1961–68 (1984).

3. State prosecutions under state RICO statutes apparently antedate federal efforts. *See 4447 Corp. v. Goldsmith,* 479 N.E.2d 578 (Ind.App. 1985), *vacated,* 504 N.E.2d 559 (Ind.1987); *Arizona v. Feld,* 745 P.2d 146 (Ariz.Ct. App.1987); *Western Business Sys., Inc. v. Slaton,* 492 F.Supp. 513 (N.D.Ga.1980) (applying Georgia RICO statute).

4. 130 Cong.Rec. 5434 (Jan. 30, 1984) (remarks of Senator Helms); *Russello v. United States,* 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1938) (RICO's "purpose is to provide new weapons of unprecedented scope for an assault upon organized crime and its economic roots.").

5. RICO's criminal penalties provide that whoever violates any provisions of RICO "shall be fined not more than $25,000 or imprisoned not more than twenty years, or both." 18 U.S.C. § 1963(a) (1982 & Supp.1984).

  RICO's forfeiture provisions provide that a person convicted of a RICO offense shall forfeit to the United States:

  (1) any interest the person has acquired or maintained in violation of section 1962 ["Prohibited activities"];

  (2) any—
  (A) interest in;
  (B) security of;
  (C) claim against; or
  (D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

  (3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeer-ing activity or unlawful debt collection in violation of section 1962.
  18 U.S.C. § 1963(a) (1984).

6. In deciding whether the material appeals to a prurient interest, the jury must avoid subjective personal or private views. The average person is the *judge* and not the object of the test. The jury must evaluate what judgment will be made by a hypothetical average person applying the collective view of the adult community. *Pinkus v. United States,* 436 U.S. 293, 300–01, 98 S.Ct. 1808, 1813, 56 L.Ed.2d 293 (1978). The Court in *Pinkus* held that "children are not to be included ... as part of the 'community.'" *Id.* at 297, 98 S.Ct. at 1811; *see also Brockett v. Spokane Arcades,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985). In addition, there is no requirement that the average person be sexually aroused or excited by the material. *United States v. Guglielmi,* 819 F.2d 451 (4th Cir.1987).

7. The "contemporary community standard" is to be applied by the jury *only* when examining the first two prongs of *Miller,* namely the "prurient appeal" and "patent offensiveness" prongs. *See infra* note 22 (discussing the three-prong *Miller* test). The third prong of *Miller,* the "serious literary, artistic, political, or scientific value" prong, is determined not by the application of the contemporary community standard, but rather by the traditional "reasonable man" standard. *See Pope v. Illinois,* —— U.S. ——, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987).

8. In *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), the Court defined "prurient interest" as follows:

  A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, i.e., a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters....

spawned more than a decade of spirited and confusing decisions.

In 1973, in an effort to redirect the course of the law in this area, the Court, in *Miller v. California,* rephrased and expanded the *Roth* test.[9] Justice Brennan, who as the author of *Roth* had arguably initiated this judicial odyssey,[10] was so disillusioned by the 15 or so years of judicial wanderings under *Roth* that at length, he dissented in *Miller* and its companion case, preferring instead an absolutist, "anything goes" approach to obscenity. Chief Justice Burger, on the other hand, persuaded a majority in *Miller* to carry on and refine the *Roth* effort to draw a line between obscenity and protected speech. Given that the instant case is the latest chapter in this saga, it is perhaps only fitting that the juxtaposed views of Justice Brennan and Chief Justice Burger serve here as a preface.

Thus, in dissenting in *Paris Adult Theatre I v. Slaton,* 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), a *Miller* companion, Justice Brennan noted that the effort to distinguish between protected and unprotected sexually oriented material, born of *Roth,* had proved so vexing, so time-consuming, and so divisive and had generated such disharmony of views [11] that the effort should be abandoned. As he put it, even

after all this effort, the subject stubbornly "remained ... resistant to the formation of stable and manageable standards." 413 U.S. at 73, 93 S.Ct. at 2665.[12] Chief Justice Burger disagreed, noting in *Miller* that the convenient, anything goes, absolutist approach is not the law and that the "Court must face up to the tough problem of constitutional judgment involved in every obscenity case." 413 U.S. at 29–30, 93 S.Ct. at 2618 (quoting *Roth,* 354 U.S. at 498, 77 S.Ct. at 1316). So in the spirit of the former Chief Justice's words, this court now faces up to "the tough problems of constitutional judgment" raised in this novel obscenity case.

### The Indictment

The indictment consists of twelve counts plus a number of RICO forfeiture allegations. Of the twelve counts, three allege RICO obscenity violations. The motions considered in this Memorandum Opinion focus solely on the three RICO counts and the accompanying forfeiture allegations.

Count I charges defendants, Dennis E. Pryba, Barbara A. Pryba, Jennifer G. Williams and Educational Books, Inc., with participating as principals in a "pattern of racketeering" involving the sale and distri-

*Id.* at 487 n. 20, 77 S.Ct. at 1310 n. 20. It is evident that the Court saw no significant difference between the A.L.I. Model Penal Code definition of "prurient" (shameful or morbid), and the meaning of "prurient" as it had been developed in the case law (lustful and lascivious) up to 1957. It is worth noting that the comments to the Model Penal Code make it clear that "prurient" is not limited to "shameful" or "morbid", but encompasses a broader use of those terms.

9. *Miller* clarified the law in several respects, including principally (a) the abandonment of the "utterly without redeeming value" standard announced in *Memoirs v. Massachusetts,* 383 U.S. 413, 86 S.Ct. 975, 16 L.Ed.2d 1 (1966), and (b) the rejection of a national standard for the community. The former imposed an unrealistic burden on the prosecutor, while the latter simply made the common sense point that citizens of Virginia or Wisconsin may well not be willing to find acceptable depictions of sexual conduct that would be acceptable to citizens of Las Vegas or New York.

10. Some choose to trace the origin of the saga to *Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) which originated the "fighting words" doctrine and listed obscenity among the types of speech unprotected by the First Amendment.

11. The best known, most memorable, and arguably, most candid comment made on the post-*Roth* the line-drawing difficulties in obscenity cases was Justice Stewart's in a concurring opinion in *Jacobellis v. Ohio,* 378 U.S. 184, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964). He noted that the hard core pornography that was unprotected under the Constitution might be impossible to define but, he said, "I know it when I see it." *Id.* at 197, 84 S.Ct. at 1683.

12. Justice Harlan was moved to describe as "intractable" the judgments required and the problems raised in obscenity litigation. *Interstate Circuit, Inc. v. City of Dallas,* 390 U.S. 676, 704, 88 S.Ct. 1298, 1314, 20 L.Ed.2d 225 (1968) (Harlan, J., dissenting).

bution of allegedly obscene materials and with investing the proceeds of such activities in an "enterprise" engaged in interstate commerce, in violation of 18 U.S.C. § 1962(a). The enterprise is said to consist of the Prybas, Williams, Educational Books and seven unindicted corporations.

Count II alleges that Pryba and Williams, as persons employed by and associated with the enterprise, violated 18 U.S.C. § 1962(c) by conducting the affairs of the enterprise through a pattern of racketeering activity. And in Count III, the Prybas, Williams and Educational Books are charged with a Section 1962(c) conspiracy to violate section 1962(a).

Defendants mount a two-pronged attack on the RICO counts in the indictment. First, defendants argue three pleading points. Defendants assert that Counts I, II and III do not properly plead an "enterprise", as required by RICO. Next, the defendants claim that the government has not sufficiently alleged a pattern of racketeering activity. Finally, one defendant, Educational Books, asserts that it must be dismissed from Count III because a corporation cannot be guilty of conspiring with its agents when the agents are alleged to have used the corporation to carry out their own purposes. Second, they contend these counts should be dismissed because RICO's forfeiture provisions run afoul of the Constitution when applied to allegedly obscene materials.[13] Specifically, defendants allege that RICO's forfeiture provi-

sions: (1) have a "chilling" effect upon the distribution of protected speech; (2) act as a prior restraint on protected speech; (3) are unduly harsh and thus violate the Eighth Amendment; (4) violate due process principles; and (5) violate the *ex post facto* clause of the Constitution. Each of these contentions is separately treated.

### Facts and Proceedings to Date

Defendants, Dennis E. Pryba, Barbara A. Pryba, Jennifer G. Williams, and Educational Books, Inc., own and operate or assist in operating a number of retail video stores that sell allegedly obscene material. On August 13, 1987, defendants were indicted on various counts under federal RICO alleging, *inter alia*, a pattern of racketeering activity involving dealing in obscene matter.[14]

On August 13, 1987, an *ex parte* restraining order was issued that enjoined defendants from selling, encumbering, or in any other way disposing of certain property that might be forfeitable under RICO's forfeiture provisions.[15] In addition, the August 13 restraining order prohibited defendants from selling all video tapes, magazines, and other printed material. This order, however, was modified on August 25, 1987. The modified order permitted defendants to continue to conduct their business as normal "without substantially dissipating or diminishing the value of the assets" of their business or property.[16]

---

**13.** This court is not faced with the question of whether the restraining order is unconstitutional. This matter was addressed and decided by another Judge of this Division when defendants moved to dismiss the restraining order on September 4, 1987.

**14.** RICO was amended in 1984 to include "dealing in obscene matter" as a racketeering activity.

"Racketeering activity" means any act or threat involving ... dealing in obscene matter, ... which is chargeable under state law and punishable by imprisonment for more than one year....
18 U.S.C. § 1961(1)(A).

**15.** The restraining order provided, in part, that defendants were prohibited from disposing of certain real property, automobiles, bank accounts, stocks, and other personal property that

might be forfeitable under RICO. Title 18 U.S.C. § 1963(a) provides for three types of forfeiture: (1) any interest acquired or maintained in violation of § 1962; (2) any property affording a source of influence over the enterprise; and (3) any property derived from the proceeds of racketeering activity. If defendants are found to be guilty of dealing in obscene matter, then the real and personal property described in the restraining order might be forfeitable under section 1963(a).

**16.** The modified order, dated August 25, 1987, provided that defendants "shall be permitted to conduct [their] business as normal without substantially dissipating or diminishing the value of the assets of the property described ... in the original restraining order." Defendants were permitted to carry on their business using a specific bank account.

## The Pleading Issues

### A. The RICO "Enterprise"

■ Defendants argue that the enterprise alleged in the indictment does not meet the statutory definition. The alleged enterprise consists of individuals and corporations. In defendant's view, the statutory definition of "enterprise" precludes lumping together individuals and corporations. *See* 18 U.S.C. § 1961(4). Defendants claim that only enterprises composed solely of individuals or solely of other entities are statutorily permitted. The RICO counts of the indictment are thus said to be fatally defective. The Court disagrees; defendants' reading of the statute does violence to the plain meaning of the statutory definition of "enterprise" and, moreover, is contrary to well-reasoned authority.

Section 1961(4) states that " 'enterprise' *includes* any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (emphasis added). This is sweeping language; there is no reason to give it a strained, restricted scope. Legislative history confirms this. The House RICO report stated that "enterprise" included

associations in fact, as well as legally recognized associative entities. Thus infiltration of any associative group by *any individual or group capable of holding a property interest* can be reached.

House Rep. No. 91–1549, 91st Cong., 2d Sess., 1970 U.S.Code Cong. & Ad.News 4007, 4032 (emphasis added).[17] The Supreme Court, in another context, has also recognized the expansiveness of the term "enterprise". In *United States v. Turk-*

The modified order also permitted defendants the use of funds for "reasonable attorneys' fees." The Court has instructed defense counsel to maintain a careful accounting of all fees received.

**17.** For further discussion of RICO's legislative history and purpose, see *United States v. Turkette,* 452 U.S. 576, 588–93, 101 S.Ct. 2524, 2531–33, 69 L.Ed.2d 246 (1981) (confirming that Congress intended to give broad scope to the term "enterprise").

*ette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed. 2d 246 (1981), the Court rejected an argument that "enterprises" should be limited to legitimate business. In reaching this conclusion, the Court noted, "Congress opted for a far broader definition of the word 'enterprise.' "[18] It also stated that "[t]here is no restriction upon the associations embraced by the definition [in § 1961(4) ]."[19]

To accept defendants' argument that the term "enterprises" does not embrace individuals together with other entities, this court would have to ignore the plain meaning of the word "includes" and find that Congress used the word to indicate that the list following was exhaustive, not merely illustrative. Nothing warrants such a construction; plain meaning and legislative intent are to the contrary, as is the sparse, but well-reasoned and uniform existing authority. The Fifth Circuit in *United States v. Thevis,* 665 F.2d 616 (5th Cir.1982), *cert. denied,* 459 U.S. 825, 103 S.Ct. 57, 74 L.Ed. 2d 61 (1982), succinctly dealt with this point. It stated:

Appellants contend that because the indictment described the enterprise as "a group of individuals associated in fact with various corporations," the enterprise alleged did not fall within the literal bounds of the statutory classifications. We reject this claim.

\* \* \* \* \* \*

We are convinced ... that RICO covers the enterprise alleged in this case. Use of the verb "includes" in the statutory definition indicates congressional intent not to limit a RICO enterprise to the specific categories listed; rather, the language "reveals that Congress opted for a

**18.** *Turkette,* 452 U.S. 576, 593, 101 S.Ct. 2524, 2533, 69 L.Ed.2d 246 (1981) (RICO "enterprises" not limited to legitimate business; enterprises may include illegitimate as well as legitimate businesses).

**19.** *Id.* at 580, 101 S.Ct. at 2527. This may be a modest overstatement as it appears unlikely that a state or municipality itself may not be a member of an enterprise. *See United States v. Mandel,* 415 F.Supp. 997 (D.Md.), *supplemented,* 415 F.Supp. 1025 (D.Md.1976).

far broader definition of the word 'enterprise'."

665 F.2d at 625 (quoting *United States v. Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 2534, 69 L.Ed.2d 246 (1981)). The Third Circuit reached the same result, noting that:

We see no indication that Congress intended to restrict the definition of "enterprise" to a number of entities or individuals that all fall within the same category.

*United States v. Aimone*, 715 F.2d 822, 828 (3d Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3586, 82 L.Ed.2d 883 (1984).[20]

Defendants argue that a different result should obtain here because the Fourth Circuit in *United States v. Computer Sciences Corp. [CSC]*, 689 F.2d 1181 (4th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983), commands that the rule of lenity applies in RICO cases and thus "includes" must be construed strictly. The case and the rule are inapposite here. *CSC* dealt with a point not here presented. It held that an unincorporated division of a corporation could not be lumped with the corporation to form an "enterprise." *CSC* did not address the argument of these defendants. Further, while the rule of lenity undoubtedly applies in RICO cases *in appropriate circumstances*, those circumstances are not present here. This is not a case where fairness and notice militate in favor of construing an ambiguity with leniency toward a defendant; rather, this is a case where the plain and ordinary meaning of the term "includes" does not fairly admit to the construction defendants' urge.

In sum, *CSC* is inapposite here. The plain meaning of the language defining "enterprise," the legislative history of the provision, and all the pertinent authority to date support this court's conclusion that a RICO enterprise can consist of individuals lumped together with corporations or other legal entities.

### B. *Pattern of Racketeering Activity*

▇ Defendants argue that the three RICO counts do not sufficiently allege the requisite "pattern of racketeering activity."[21] In essence, defendants argue that the activity alleged in the indictment constitutes a single scheme, not separate acts. This indictment, they claim, is analogous to the one at issue in *International Data Bank, Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987). There the issuance of a fraudulent prospectus was held to be a single, unitary scheme, not a RICO pattern of racketeering.

Defendants' argument is unpersuasive. *Zepkin* is not in point. In contrast to the issuance of a prospectus, this indictment alleges a series of separate but related acts dealing with the sale and distribution of obscene material. The allegations fit squarely within RICO, which defines a "pattern" as "at least two acts" and "racketeering activity" as including "dealing in obscene matter." 18 U.S.C. § 1961(5), (1)(A). The following legislative history from the RICO Senate Report dispels any doubt that this indictment properly pleads a pattern of racketeering:

The target of [RICO] is ... not sporadic activity. The infiltration of legitimate business normally requires more than one "racketeering activity" to be effective. It is this factor of *continuity plus relationship* which combines to produce a pattern.

S. Rep. No. 617, 91st Cong., 1st Sess. 158, U.S.Code Cong. & Admin.News 1970, p. 4007 (emphasis added), *quoted in Sedima, S.P.R.L. v. IMREX Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985). The Fourth Circuit interprets this language to require that "the predicate acts must be related and must be a part of a continuous criminal endeavor." *Zepkin*, 812 F.2d at 154. This indictment, therefore, properly pleads a "pattern of racketeering activity."

---

**20.** *See also United States v. Huber*, 603 F.2d 387, 392–94 (2d Cir.1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1986) ("enterprise" can include more than one corporation).

**21.** *See* 18 U.S.C. § 1961(1), (5), 1962(a), (c).

## C. *Conspiracy*

■ The corporate defendant, Educational Books, Inc., asserts that Count III deserves dismissal because, contrary to the indictment's allegations, the corporation cannot conspire with its own agents. In essence, this defendant urges the application in this context of the civil intracorporate conspiracy rule. *See McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.*, 644 F.Supp. 580, 585 (E.D. Mich.1986). Dispositive of this claim is that an exception to the intracorporate conspiracy exists in the criminal arena. *See, e.g., United States v. Peters*, 732 F.2d 1004, 1008 (1st Cir.1984).

### The Constitutional Issues

#### A. *Chilling Effect of RICO*

■ Defendants claim that RICO chills protected speech for two reasons: first, it is said that purveyors will be deterred from dealing in non-obscene erotic literature given the breadth and vagueness of the underlying criminal offense, *i.e.*, obscenity. Second, it is urged that RICO's forfeiture provisions are so draconian as to deter dealers from dealing in protected speech at the margin. In other words, vague definitions of obscenity force purveyors to guess about the status of some "speech" at the margins, and they will be deterred from such guessing by the risk of criminal prosecution and the severity of potential sanc-

tions. The victim, defendants contend, will be protected speech at the margins, presumably erotic works that skirt the boundary but do not cross over into the realm of obscenity.[22]

The gravamen of both prongs of this attack is the alleged excessive vagueness and breadth of the statutory proscriptions, one state (Va.Code Ann. § 18.2–372), one federal (18 U.S.C. § 1461 *et seq.*), that are the predicates for a RICO violation. The short answer is that both statutes have already passed constitutional muster. They have been found to give "adequate warning of the conduct proscribed" so as to permit the law to be fairly administered. *See Roth v. United States*, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957).

The federal obscenity statute, 18 U.S.C. § 1461 *et seq.* and its predecessors, has passed constitutional muster more than once.[23] The same is true of the Virginia analog, Va.Code Ann. § 18.2–374.[24] Both frame offenses in language that "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices ..., give[s] adequate warning of the conduct proscribed and mark the 'boundaries sufficiently distinct for judges and juries fairly to administer the law.' " *Roth v. United States*, 354 U.S. at 491–92, 77 S.Ct. at

---

**22.** The existing border demarcating the line between protected speech and obscenity is given by *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). Speech may be banned as obscene where:

(a) the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest;

(b) the work describes, in a patently offensive way, sexual conduct defined by the applicable state law; and

(c) the work, taken as a whole, lacks serious literary, political, or scientific value.
413 U.S. at 24, 93 S.Ct. at 2615. Thus, as *J.R. Distributors, Inc. v. Eikenberry*, 725 F.2d 482 (9th Cir.1984), *rev'd on other grounds sub nom. Brockett v. Spokane Arcades*, 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985) indicates, works that merely arouse normal sexual responses (in contrast to shameful or morbid sexual responses) may be constitutionally protected even if they contain an isolated example of a

patently offensive description of sexual conduct and even if the works lack the redeeming value defined in *Miller*. *Eikenberry*, 725 F.2d at 490–92. It is, presumably, this speech that is at risk at the margin.

**23.** *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *see, e.g., Roth v. United States*, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957).

**24.** There can be little doubt of the constitutionality of the Virginia statute as its language tracks closely the three part test announced in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). The constitutionality of an earlier, less precise version was upheld in *Grove Press, Inc. v. Evans*, 306 F.Supp. 1084 (E.D.Va.1969); *see also Educational Books, Inc. v. Commonwealth*, 228 Va. 392, 323 S.E.2d 84 (1984).

1312–13 (1957) (quoting *United States v. Petrillo*, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 1541–42, 91 L.Ed. 1877 (1947)). To be sure, there may be some fuzziness at the boundaries, but absolute precision is neither practical nor constitutionally required.

> That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense....

*Roth*, 354 U.S. at 491–92, 77 S.Ct. at 1313. Defendants' First Amendment chilling argument is, therefore, unfounded insofar as it rests on the alleged vagueness of the underlying obscenity statutes. Both are adequately precise.

A somewhat different question is presented by the application of RICO forfeiture remedies in obscenity prosecutions. So draconian are they, the defendants claim, that the unconstitutional chilling that occurs is tantamount to a prior restraint.[25] The court turns next to this argument.

### B. *Prior Restraint*

■ Defendants argue that RICO's forfeiture provisions (18 U.S.C. § 1963) operate in alleged obscenity cases, as here, as impermissible prior restraints. Heavy reliance is placed on *Near v. Minnesota*, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931), and its progeny which make unmistakably clear the courts' hostility toward prior restraints.

The flaw in this argument is the recognized distinction between prior restraints and subsequent punishment. The evil of a prior restraint is that speech is suppressed before its status is judicially determined. Such restraints are far more likely to chill, indeed to suppress, free speech than subsequent punishment, which can be imposed only after there is the procedural safeguard of a disinterested judicial determination concerning the alleged illegality. A person is punished for speech-related conduct only after he is given the opportunity to litigate, *inter alia*, the constitutionality of the statute, either facially or as applied to him. In obscenity cases, he is also permitted to present the material to a jury and attempt to persuade it, under *Miller*, that the material deserves constitutional protection. Prior restraints deprive "speakers" of these important safeguards. Thus it is that prior restraints are disfavored and come into court "bearing a heavy presumption against ... [their] constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).[26] Such restraints operate to compel a "speaker" to forego his First Amendment rights.

This is not to say that subsequent punishment schemes such as RICO's forfeiture scheme have no chilling effect whatever. Surely it has some; indeed, it is designed to accomplish just that end. But this "chilling" is a wholly legitimate consequence of the RICO forfeiture provisions or any other criminal penalty.[27] Deterrence (or chilling)

---

**25.** A "prior restraint" is defined as "the imposition of a restraint on a publication before it is published." Black's Law Dictionary 1074 (5th ed. 1979). Courts often use the terms "prior restraint" and "chilling effect" interchangeably. *See, e.g., Arizona v. Feld*, 745 P.2d 146 (Ariz.Ct. App.1987). Yet "chilling effect" refers to the distribution of material, not publication. Although a statute may not amount to a prior restraint on publication, it may cause a chilling effect on distribution. *See United States v. John Doe (Model Magazine)*, 829 F.2d 1291 (4th Cir. 1987).

**26.** It is worth noting that judicial antipathy toward prior restraints does not mean that all such restraints are *per se* unlawful. Even *Near* recognized there might be "exceptional cases" in which a prior restraint might be lawful. The Court gave as examples publication of sailing dates of naval ships and the number and location of troops. 283 U.S. at 716, 51 S.Ct. at 631; *see also Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) (occasions exist where prior restraint may be imposed so long as the censor's judgment is subject to immediate court scrutiny).

**27.** One commentator argues the contrary. *See* Mayton, *Toward A Theory of First Amendment Process: Injunction of Speech, Subsequent Punishment, and the Costs of the Prior Restraint Doctrine*, 67 Cornell L.Rev. 245 (1982). *But see* Redish, *The Proper Role of the Prior Restraint Doctrine in First Amendment Theory*, 70 Va.L. Rev. 53 (1983).

through the threat of prosecution and punishment is a legitimate goal of the criminal law. Once it is decided that obscenity does not merit First Amendment protection and indeed, once it is decided that obscenity is so pernicious that it should be criminally proscribed, then a subsequent punishment, like RICO's forfeiture scheme, is a sensible and wholly legitimate law enforcement weapon. It is specially designed to chill or deter proscribed, unprotected speech; unconstitutional chilling occurs only if the definition of obscenity is excessively broad or vague so that some protected speech is unintentionally ensnared in the imprecise net that is cast.[28]

Nor is it significant that the forfeiture penalty may impact adversely on defendants' future speech. That fact alone does not mean that the First Amendment is implicated. The Constitution does not forbid punishment for a crime simply because that punishment might affect free expression. As the Court in *Arcara v. Cloud Books,* 478 U.S. 697, 106 S.Ct. 3172, 3178, 92 L.Ed.2d 568 (1986) pointed out,

> book selling in an establishment used for prostitution [or distribution of obscene materials] does not confer First Amendment coverage to defeat a valid statute aimed at penalizing and terminating illegal uses of premises.

In summary, an attack on the RICO forfeiture provisions as a prior restraint misses the mark.[29] Subsequent punishments are simply not prior restraints. They are applied only after the due process of a criminal trial and whatever chilling effect they may have is legitimate and intended.[30]

Only meager authority exists on the constitutionality of RICO or RICO-type forfeiture provisions in obscenity cases. What does exist, however, supports this court's conclusion that RICO's forfeiture provisions do not operate to offend the First Amendment in obscenity cases. The sole federal case is *Western Business Systems,*

28. Defendants cite *J.R. Distributors, Inc. v. Eikenberry,* 725 F.2d 482 (9th Cir.1984), *rev'd on other grounds sub nom. Brokett v. Spokane Arcades,* 472 U.S. 491, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), in support of their claim that RICO punishes protected speech. There, the Ninth Circuit held unconstitutional a state statute that permitted a fine to be imposed against a defendant found guilty of dealing in obscene matter. Such a fine was to be based, in part, on profits made from the sale of protected as well as unprotected material. The court applied "the familiar requirement that statutes punishing expressive conduct 'must be carefully drawn ... to punish only unprotected speech and not be susceptible of application to protected expression.'" *Id.* at 494 (quoting *Gooding v. Wilson,* 405 U.S. 518, 522, 92 S.Ct. 1103, 1106, 31 L.Ed.2d 408 (1972)). Yet, *Eikenberry* is inapposite. There, no nexus was required between the sale of obscene matter and protected speech. A defendant could be fined for the profits made on protected matter simply because obscene material was also sold in the same place of business. RICO forfeiture, however, requires a nexus between the sale of obscene matter and protected material. Profits from the sale of protected material may be forfeited only if they are traceable to the sale of obscene matter. Thus, RICO does not punish the sale of protected speech; rather, the provisions act *in personam* to punish a guilty defendant. "[P]roperty forfeitable under RICO need not be 'guilty.' RICO forfeiture is aimed at divorcing guilty persons from the enterprises they have corrupted." *United States v. Cauble,* 706 F.2d 1322, 1350 (5th Cir.1983).

29. Defendants also cite a recent Fourth Circuit decision, *United States v. John Doe (Model Magazine),* 829 F.2d 1291 (1987), in support of their claim that RICO's forfeiture provisions are unconstitutional. This reliance is misplaced; *Model Magazine* is inapposite. There, the court held that a subpoena impermissibly "chilled" protected speech. Specifically, the subpoena demanded all video tapes depicting a broad range of sexual activity. So worded it was manifestly overbroad. It crossed the *Miller–Roth* line. Thus, that court reasoned that movie sellers would simply self-censor protected as well as unprotected material because the subpoena was excessively broad.

RICO is not overly broad in scope; it "chills" only the distribution of unprotected expressions; a dealer need only self-censor *obscene* matter to avoid RICO's forfeiture penalties. This type of chilling or self-censorship is constitutionally permissible and Congress manifestly intended that it occur.

30. This does not mean that subsequent punishment is wholly immune from constitutional attack; it is only immune from attack on the ground that it is a prior restraint. Subsequent punishment may be vulnerable on other grounds. *See Landmark Communications, Inc. v. Virginia,* 435 U.S. 829, 98 S.Ct. 1535, 56 L.Ed.2d 1 (1978) (punishment for release of information concerning confidential investigation of a judge struck down on First Amendment grounds).

*Inc. v. Slaton,* 492 F.Supp. 513 (N.D.Ga. 1980), which rejected a claim that Georgia's RICO forfeiture provisions constituted an impermissible prior restraint on protected speech. There, plaintiffs, purveyors of sexually explicit material, sought to enjoin prospective obscenity prosecutions under the Georgia RICO statute on the ground that forfeiture of property acquired with racketeering proceeds amounted to a prior restraint on presumptively protected speech.

The Georgia RICO forfeiture provisions, like those of the federal statute, make subject to forfeiture all property "of whatever nature, no matter how inoffensive, if it is acquired with racketeering proceeds." *Id.* at 514. The point to be kept in mind, as that court saw it, is that:

> Forfeiture could apply to any chattel whatever, if it was acquired with the proceeds of racketeering. Thus, if the items seized are books or movie films, the seizure is totally unrelated to their contents. They would be forfeited under the statute not because of any likelihood of obscenity, but because they were personal property realized through or derived from crime.

*Id.*

Ultimately, the court in *Western Business Systems* refused an injunction, concluding that "plaintiffs' arguments regarding the forfeiture provisions are inadequate to cre-

ate a genuine suppression of speech issue." *Id.*

The Indiana Supreme Court reached a similar result in *4447 Corp. v. Goldsmith,* 504 N.E.2d 559 (Ind.1987), a case involving the Indiana RICO statute. That court, noting a dearth of pertinent authority, found *Western Business Systems* persuasive and ruled that the Indiana RICO, patterned after the federal act, was not an unconstitutional prior restraint. In the words of that court,

> We agree with ... [*Western Business Systems'*] reasoning that the purpose of the forfeiture provisions is totally unrelated to the nature of the assets in question. The overall purpose of the anti-racketeering laws is unequivocal, even where the predicate offense alleged is a violation of the obscenity statute. The remedy of forfeiture is intended not to restrain the future distribution of presumptively protected speech but rather to disgorge assets acquired through racketeering activity. Stated simply, it is irrelevant whether assets derived from an alleged violation of the RICO statute are or are not obscene.

*4447 Corp.,* 504 N.E.2d at 565.

The third and most recent pertinent decision is *Arizona v. Feld,* No. 148389 (Ariz. Ct.App.1987). There, an Arizona appellate court struck down portions of the Arizona forfeiture provisions insofar as they purported to reach property essentially unconnected with the racketeering activity.[31]

---

31. In doing so, the Arizona court criticized the Indiana Supreme Court's decision in *4447 Corp. v. Goldsmith,* 504 N.E.2d 559 (Ind.1987), opting instead to follow the Indiana intermediate appellate court decision at 479 N.E.2d 578 (1985). The latter court had invalidated the Indiana RICO provisions as applied to obscenity on grounds that they were prior restraints on putatively protected speech and for failure to comply with procedural safeguards and to use less restrictive means. The Indiana Supreme Court vacated this ruling. This court does not find persuasive, and therefore does not follow, the reasoning of the Indiana appellate court in *4447 Corp.* or that of the Arizona appellate court in *Feld* insofar as either decision is construed to invalidate forfeiture provisions extending only to assets that are involved in or are the fruits of the illegal racketeering activity, the so-called "ill-gotten gains." This court considers and decides here that such RICO forfeiture provisions

are not impermissible prior restraints and not facially unconstitutional. This court does not consider or decide whether the specific pre-conviction seizure activities under the forfeiture provisions in this case permissibly or impermissibly prevented the circulation of presumptively protected materials. *See supra* note 13. This seemed to be the focus of the Indiana appeals court as the state had padlocked the stores, seized books, magazines, films and the like only a relatively small part of which had been alleged to be obscene. Thus, the focus of the Indiana appellate court decision seemed to be the specific pre-conviction application of the RICO provisions in that case. No such seizure and padlocking are here in issue. Rather, the issue presented here is whether the RICO forfeiture provisions, construed to extend only to ill-gotten gains of the racketeering activity, are facially unconstitutional as prior restraints on protected speech.

Such provisions are not here in issue.[32] Significantly, however, that court upheld those portions of the Arizona statute that most closely resemble the RICO forfeiture provisions. The forfeiture provisions upheld in *Feld*, Arizona Code § 13–2314(D)(6), are essentially similar to RICO's and provide as follows:

6. Forfeiture to the general fund of the state or county as appropriate to the extent not already ordered to be paid in other damages:

(a) Any property or other interest acquired or maintained by a person in violation of § 13–2312.

(b) Any interest in, security of, claims against or property, office, title, license or contractual right of any kind affording a source of influence over any enterprise or other property which a person has acquired or maintained an interest in or control of, conducted or participated in the conduct of in violation of § 13–2312.

(c) All proceeds traceable to an offense included in the definition of racketeering in § 13–2301, subsection D, paragraph 4 and all monies, negotiable instruments, securities, property and other things of value used or intended to be used to facilitate commission of the offense.

The Arizona court approved these forfeiture provisions stating:

The remedy in subsection (D)(6)—forfeiture of interests or proceeds—is proper to the extent that the obscene materials themselves, or proceeds from materials determined to be obscene, may be seized. Also, as held in *Western Business Systems*, items of the enterprise could be forfeited if they were gains from other racketeering activity. *Racketeering proceeds cannot be laundered merely by being invested in bookstores.*

*Feld*, slip op. at 140–41 (emphasis added).

Further support exists for this Court's holding that RICO's forfeiture provisions do not act as an unconstitutional prior restraint. The Sixth Circuit, in *511 Detroit Street v. Kelley*, 807 F.2d 1293 (6th Cir. 1986), held that a state obscenity law, which imposed very large fines for obscenity violations, was not an unconstitutional prior restraint on expression. There, Michigan's obscenity laws provided for a $100,000 fine for a first offense and a mandatory $50,000 to $5,000,000 fine for a subsequent offense. The district court reasoned that the large fines made the statute "the equivalent of an unconstitutional padlocking or closure law." *Id.* at 1298 (citations omitted). On appeal, the Sixth Circuit reversed the district court, stating:

We refuse to hold that a statute threatening fines that could impair the operation of a business is an impermissible prior restraint on expression, even where that business also involves dissemination of protected materials. The fact that a person does some business disseminating protected materials cannot immunize

---

32. The Arizona RICO post-conviction remedies held unconstitutional in *Feld* are as follows:

(1) Ordering any person to divest himself of any interest, direct or indirect, in any enterprise.

(2) Imposing reasonable restrictions on the future activities or investments of any person....

(3) Ordering dissolution or reorganization of any enterprise.

Ariz.Rev.Stat.Ann. § 13–2314(D)(1)–(3).

These provisions are identical to the RICO *civil* penalties set forth in 18 U.S.C. § 1964(a). Yet the constitutionality of RICO's civil penalties is not in issue here; this is a criminal proceeding. Even assuming these civil penalties are unconstitutional, the criminal forfeiture provisions here in issue need not fail. There exists "the elementary principle that the same statute may in part be constitutional and in part unconstitu-tional, and that if the parts are wholly independent of each other, that which is constitutional may stand and that which is unconstitutional may be rejected." *Allen v. Louisiana*, 103 U.S. (13 Otto) 80, 83–84, 26 L.Ed. 318 (1881), *quoted in Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502, 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985); *see also Feld*, slip. op. at 144. Thus, the court need not and will not address the constitutionality of RICO's civil penalties as they apply to obscenity cases. This court is well aware of "the cardinal rules governing the federal courts: '[o]ne, never to anticipate a question of constitutional law in advance of the necessity of deciding it; the other never to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied.'" *Brockett*, 472 U.S. at 501, 105 S.Ct. at 2801 (quoting *United States v. Raines*, 362 U.S. 17, 21, 80 S.Ct. 519, 523, 4 L.Ed.2d 524 (1960)).

that person from large fines that may be imposed for violation of criminal law. *Id.* at 1299.

In summary, this Court concludes that principle and authority confirm that RICO's forfeiture provisions, construed to reach the ill-gotten gains of racketeering activity, are not facially invalid prior restraints on protected speech.

The heart of this matter is that Congress has found that organized crime uses and exploits obscenity to further its pernicious aims and, therefore, that a pattern of racketeering activity deserves the forfeiture sanction. The fact that the racketeering activity involves expressive conduct is irrelevant. The First Amendment cannot be a shield for illegal activity. RICO's forfeiture provisions are not more of a restraint on free speech than is any felony conviction or prison sentence. Both of the latter are provisions that in some respect restrain speech but neither can be coherently termed a First Amendment violation. Logic dictates the same conclusion for RICO's forfeiture provision. The forfeiture remedy, properly construed and applied, does not impermissibly restrain further dissemination of speech, but rather simply requires those engaged in racketeering acts to disgorge their ill-gotten gains.

## C. *Eighth Amendment*

■ Defendants claim that RICO's forfeiture provisions constitute excessive fines or cruel and unusual punishment in violation of the Eighth Amendment. Neither argument is persuasive. On their face and construed to reach only racketeering's ill-gotten gains, the forfeiture provisions seem eminently apt and suitable to their undoubtedly legitimate purpose. As such, they are neither excessive fines, nor cruel and unusual punishment. The Fourth Cir-

cuit confirmed this conclusion in *United States v. Grande,* 620 F.2d 1026 (4th Cir.), *cert. denied,* 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980). It found that

The magnitude of [RICO] forfeiture is directly keyed to the magnitude of the defendant's interest in the enterprise conducted in violation of the law. Accordingly, we conclude that it is not cruel and unusual in the constitutional sense.

*Id.* at 1039.[33] On its face, therefore, the RICO forfeiture sanction meets the Eighth Amendment standard.

To be sure, a specific forfeiture may run afoul of the Amendment's proportionality requirement.[34] In *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983),[35] the Supreme Court declared unconstitutional a life sentence imposed without possibility of parole and set forth a three-part test to use in reviewing the proportionality of sentences under the Eighth Amendment. *Id.* at 290–303, 103 S.Ct. at 3009–16. Certain language in the Court's opinion implied that *all* criminal sanctions are subject to proportionality analysis under the Eighth Amendment:

[W]e hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as to the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson v. California,* 370 U.S. [660] at 667 [82 S.Ct. 1417, at 1421, 8 L.Ed.2d 758 (1962)], a single day in prison may be unconstitutional in some circumstances.

---

**33.** *See also United States v. Huber,* 603 F.2d 387 (2d Cir.1979).

**34.** The Ninth Circuit in *United States v. Busher,* 817 F.2d 1409, 1414–15, n. 9 (9th Cir.1987) criticizes *Grande* for misapplying the proportionality requirement. This criticism seems to miss the mark and in any event does not diminish

the persuasiveness of *Grande* on the questions of the facial validity of RICO's forfeiture provisions under the Eighth Amendment.

**35.** In *Solem,* the Court held that a life sentence without parole was unconstitutionally disproportionate.

463 U.S. at 290, 103 S.Ct. at 3009–10 (citation omitted).

The Fourth Circuit, however, in *United States v. Rhodes*, 779 F.2d 1019 (4th Cir. 1985), held that a severe sentence for a term of years *did not* require a proportionality analysis. *Id.* at 1027–28. The court interpreted *Solem* as requiring an extensive proportionality analysis "only in those cases involving life sentences without parole." *Id.* at 1028. In light of *Rhodes*, it appears that RICO's forfeiture provisions do not require a proportionality analysis. Yet even if such an analysis is required, no final judgment can be made as to proportionality until the matter is tried. Any attempt to perform a proportionality analysis now would be premature. It is enough at this point for this court to conclude, as it does, that RICO's forfeiture provisions are facially valid and that the forfeiture allegations in this indictment, if proved, are not on their face unconstitutionally disproportionate.[36]

### D. *RICO Forfeiture Does Not Violate Due Process*

■ The Fourth Circuit has addressed the issue of whether RICO's forfeiture provisions violate the Fifth Amendment's due process clause and concluded that they do not. *United States v. Grande*, 620 F.2d 1026 (4th Cir.1980). After careful historical analysis, the court correctly concluded that RICO's provisions are much narrower than the broad forfeiture proscribed by Article III, § 3, cl. 2 of the Constitution.[37] Thus, RICO forfeiture is not unconstitu-

tional as a "forfeiture of estate." *Id.* at 1039.

### E. *Ex Post Facto*

■ Finally, defendants argue that RICO's forfeiture provisions, as applied to property acquired prior to 1984,[38] are violative of *ex post facto* laws. Yet all courts that have considered whether RICO violates the *ex post facto* clause of the Constitution have uniformly concluded that it does not. *E.g., United States v. Brown*, 555 F.2d 407, 416–17 (5th Cir.1977), *cert. denied*, 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978); *United States v. Campanale*, 518 F.2d 352, 364–65 (9th Cir.1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). Indeed, the Senate Judiciary Committee, in drafting RICO, specifically considered this issue and reached the following conclusion:

> One act in the pattern must be engaged in after the effective date of the legislation. This avoids the prohibition against *ex post facto* laws and bills of attainder. Anyone who has engaged in the prohibited activities before the effective date of the legislation is on prior notice that only one further act may trigger the increased penalties and new remedies [including forfeiture] of this chapter.

S. Rep. No. 617, 91st Cong., 1st Sess. 158–160 (1970), U.S.Code Cong. & Admin.News 1970, p. 4007. It is clear from RICO's legislative history and subsequent case law that RICO is not constitutionally infirm as an *ex post facto* law. Accordingly, defendants' properties acquired by proceeds of racketeering activity are subject to forfei-

---

**36.** There may indeed be circumstances where the forfeiture ordered, in light of all circumstances, is unconstitutionally disproportionate. See *Busher*, 817 F.2d at 1414. Yet, whether this court has authority to mitigate or adjust the jury's forfeiture verdict is unclear. *See, e.g., United States v. Kravitz*, 738 F.2d 102, 104 (3d Cir.1984) (under 18 U.S.C. 1963(a) forfeiture is mandatory upon finding that appellant's property was used to promote racketeering). *See generally* Reed, *Criminal Forfeiture Under the Comprehensive Forfeiture Act of 1984: Raising the Stakes*, 22 Am.Crim.L.Rev. 747, 770 (1985) (discussing authority of district courts to mitigate jury's forfeiture verdict). In any event, this issue is not yet before the court.

**37.** Article III, § 3, cl. 2 of the Constitution reads: "no Attainder of Treason shall work Corruption of Blood, or Forfeiture except during the Life of the Person attainted." Article III, § 3, cl. 2 of the Constitution was supplemented by the first congress, which enacted 1 Stat. 112, 117 (1790), presently codified as 18 U.S.C. § 3563. Currently, that section reads: "No conviction or judgment shall work corruption of blood or any forfeiture of estate."

**38.** In 1984 RICO was amended to include dealing in obscene matter as a "racketeering activity." *See supra* note 4 and accompanying text.

ture, provided all other requirements are met, even though they were purchased prior to 1984.

## CONCLUSION

The application of the RICO criminal forfeiture sanctions to the crime of obscenity raises novel and important constitutional issues. This court concludes, at length, that Congress' decision to use RICO as a weapon against purveyors of obscenity does not offend the Constitution. This is so because the RICO criminal forfeiture provisions, as applied to obscenity, require that there be a nexus between the obscenity purveyor's ill-gotten racketeering gains and any protected material seized. Post conviction seizure of arguably protected materials and assets is constitutionally permissible where there is proper proof that they were acquired or maintained with the ill-gotten gains from racketeering activity, including dealing in obscenity. Therefore, RICO and its forfeiture provisions do not unconstitutionally chill protected speech or act as prior restraints. To be sure, RICO's sanctions are severe, but severity alone does not cause unconstitutional chilling or convert these sanctions into prior restraints.[39] In adding obscenity to RICO, Congress has stayed within constitutional bounds.

An order has been entered reflecting the court's rulings on these issues. It remains only for the court to note that the arguments and briefs of counsel for all the defendants and the United States reflected competency, energy (on occasion, perhaps, to an excess) and ingenuity.

The Clerk of this Court is directed to send copies of this Memorandum Opinion to counsel of record.

---

**39.** The crux of defendants' chilling and prior restraint arguments is the alleged excessive vagueness of the obscenity standard. This attack was long ago laid to rest in *Roth* and its progeny. The *Miller–Roth* standard is a middle ground between the absolutism that would allow, indeed protect, all obscene expression and a philosophy that states should have unfettered discretion to ban as much or as little sexually explicit expression as they wish. The genius of this middle ground solution is that it allocates to the people the essential power to regulate obscenity; it defines obscenity, it does not prohibit it. That decision is left in the first instance to the people acting through Congress or their state legislatures. Conceivably, the people might choose to legalize dissemination of obscene expressions. The people have not so chosen. They have, on the contrary, chosen to exercise their right to proscribe obscenity. The *Miller–Roth* middle ground also maximizes the people's power over the regulation of obscenity by giving juries the right to decide cases under a temporally and geographically flexible community standard. This may result in an imperfect or imprecise line between obscenity and protected speech, but not an unconstitutional one.