Ferris J. ALEXANDER, Plaintiff,

v.

Richard THORNBURGH, in his official capacity only as Attorney General of the United States, Defendant.

Civ. No. 4–88–526.

United States District Court,
D. Minnesota,
Fourth Division.

May 5, 1989.

Randall D.B. Tigue, Minneapolis, Minn., for plaintiff.

Jerome G. Arnold, U.S. Atty., Mary E. Carlson, Asst. U.S. Atty., Minneapolis, Minn., for defendant.

## ORDER

DOTY, District Judge.

Plaintiff Ferris Alexander commenced this action seeking a declaration that certain provisions of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, 90 Stat. 2143 (codified in scattered sections of 18, 21, 28, 29, 31 and 42 U.S.C.) ("CCCA"), are repugnant to the United States Constitution, and requesting an order permanently enjoining enforcement of the provisions in question. Three chapters of the CCCA provide the basis for plaintiff's constitutional challenge. First, plaintiff challenges those portions of the CCCA which amended the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO") by adding state and federal offenses involving obscenity to the definition of "racketeering activity" contained in 18 U.S.C. § 1961(1). Second, he challenges the application of those portions of the CCCA establishing the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, when the underlying offense consists of a violation of obscenity laws or of RICO when there are not two or more predicate offenses unrelated to obscenity. Third, plaintiff challenges those portions of the CCCA which establish the Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551–3673 and 28 U.S.C. § 991–98, and authorize the promulgation of the Sentencing Guidelines. According to plaintiff, the Sentencing Reform Act of 1984 is unconstitutional to the ex-

tent that it applies to obscenity offenses or RICO offenses when there are not at least two predicate offenses unrelated to obscenity.

Previously, defendant moved for an order preliminarily enjoining enforcement of RICO when there were not two or more predicate offenses unrelated to obscenity.[1] That motion was denied. This matter is presently before the Court upon defendant's motion to dismiss and for summary judgment. The Court will grant those motions.

## FACTUAL BACKGROUND

For many years, plaintiff has engaged in the purchase and sale of books, magazines, films and videotapes. Some of the materials purchased and sold are sexually explicit. On May 10 and 11, 1988, FBI and IRS agents executed search warrants at 23 bookstores, video outlets and theaters located in Minneapolis, St. Paul, Rochester, Winona and Duluth, Minnesota. Many of the bookstores, theaters and video outlets were owned by the plaintiff. Pursuant to the warrant, the agents confiscated three copies of allegedly obscene materials, including videotapes and magazines. Plaintiff further alleges that several of the employees have been subpoenaed by a federal grand jury.

Based upon the execution of these search warrants and the issuance of the grand jury subpoenas, plaintiff has concluded, and asserts here, that the United States intends to seek an indictment against him under obscenity and RICO statutes. Plaintiff has sought to restrain enforcement of the provisions in question, contending that they are vague and overbroad; constitute an unconstitutional prior restraint on presumptively protected speech; unconstitutionally chill protected speech; and authorize cruel and unusual punishment in violation of the eighth amendment to the United States Constitution.

---

1. On the motion for a preliminary injunction, plaintiff advanced only his claim that RICO's penalty provisions unconstitutionally chill protected speech and constitute an unlawful prior restraint. Accordingly, the Court did not ad-

dress plaintiff's eighth amendment challenge to RICO's penalty provisions nor did it address his constitutional challenges to the Bail Reform Act and the Sentencing Guidelines.

CHALLENGED STATUTES

## I. *RICO*

■ Under RICO it is unlawful for any person to: invest income received from a pattern of racketeering activity in an enterprise engaged in interstate commerce; acquire an interest in an enterprise through a pattern of racketeering activity; or conduct the affairs of an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962. Racketeering activity is that activity commonly associated with organized crime such as gambling, dealing in narcotics or dangerous drugs, and extortionate credit transactions. *See* 18 U.S.C. § 1961(1). In 1984, based upon its observation that organized crime derives a large source of income from dealing in obscene materials, Congress amended RICO by adding state and federal offenses involving obscenity to the definition of "racketeering activity". 130 Cong. Rec. S433–S434 (1984).

In order to attack organized crime at its economic roots, Congress deliberately provided stiff criminal penalties and civil remedies for RICO violations. *Russello v. United States*, 464 U.S. 16, 26, 104 S.Ct. 296, 302, 78 L.Ed.2d 17 (1983). RICO's criminal penalties include imprisonment, fines, and mandatory forfeiture of any interest in property connected to the racketeering activity. 18 U.S.C. § 1963.[2] Forfeiture under § 1963 is not limited to those assets of a RICO enterprise that are tainted by their use in connection with racketeering activity, rather a defendant's entire interest in "any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of Section 1962" may be subject to forfeiture. 18 U.S.C. § 1963(a)(2); *United States v. Busher*, 817 F.2d 1409, 1413 (9th Cir.1987).

In addition to imposing mandatory forfeiture, § 1963 confers broad power on the government to obtain preconviction orders restraining the defendant's use of property allegedly subject to forfeiture. 18 U.S.C. § 1963(d).[3] Unlike those subsections of

---

**2.** 18 U.S.C. § 1963 provides in part:

(a) Whoever violates any provision of section 1962 of this chapter shall be fined under this title or imprisoned not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment), or both., [sic] and shall forfeit to the United States, irrespective of any provisions of State law—

(1) any interest the person has acquired or maintained in violation of section 1962;

(2) any—

(A) interest in;

(B) security of;

(C) claim against; or

(D) property or contractual right of any kind affording a source of influence over; any enterprise which the person has established, operated, controlled, conducted, or participated in the conduct of in violation of section 1962; and

(3) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity or unlawful debt collection in violation of section 1962.

The Court, in imposing sentence on such person shall order, in addition to any other sentence imposed pursuant to this section, that the person forfeit to the United States all property described in this subsection. In lieu of a fine otherwise authorized by this section, a defendant who derives profits or other proceeds from an offense may be fined not more than twice the gross profits or other proceeds.

(b) Property subject to criminal forfeiture under this section includes—

(1) real property, including things growing on, affixed to, and found in land; and

(2) tangible and intangible personal property, including rights, privileges, interests, claims and securities.

**3.** (d)(1) Upon application of the United States, the court may enter a restraining order or injunction, require the execution of a satisfactory performance bond, or take any other action to preserve the availability of property described in subsection (a) for forfeiture under this section—

(A) upon the filing of an indictment or information charging a violation of section 1962 of this chapter and alleging that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section; or

(B) prior to the filing of such an indictment or information, if, after notice to persons appearing to have an interest in the property and opportunity for a hearing, the court determines that—

(i) there is a substantial probability that the United States will prevail on the issue of forfeiture and that failure to enter the order will result in the property being destroyed, removed from the jurisdiction of the court, or

§ 1963 governing forfeiture, subsection (d), providing for pretrial restraining orders, is not penal in nature but is intended to remove limitations on the effectiveness of forfeiture remedies by preserving the availability of forfeitable assets until the conclusion of trial. Section 1963(d)(1) authorizes the government to seek, and the courts to enter, injunctions and restraining orders before or after the defendant is indicted. Restraining orders issued *after* indictment may be issued solely on the basis of the indictment's allegations that the property described would be subject to forfeiture upon conviction. There is no requirement of a special judicial hearing either before or after the order is entered. 18 U.S.C. § 1963(d)(1)(A). Restraining orders may be issued *prior to* the filing of an indictment or information only after notice and an opportunity for a hearing is given to persons appearing to have an interest in the property, and only after a judicial determination is made that there is a probability that the government will prevail on the issue of forfeiture, that failure to enter the order will result in the property being made unavailable for forfeiture, and that the need to preserve the availability of the property outweighs any hardship to any party against whom the order is to be entered. 18 U.S.C. § 1963(d)(1)(B).

RICO's civil remedies provision authorizes courts to order: persons to divest themselves of any interest in a enterprise; restrictions on the defendant's future conduct, including prohibiting the individual from engaging in the same type of endeavor or enterprise; and dissolution or reorganization of any enterprise. 18 U.S.C.

§ 1964(a). Further, courts may enter pretrial "restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds." 18 U.S.C. § 1964(b).

## II. *Bail Reform Act*

The Bail Reform Act of 1984 replaced §§ 3141–3151 of Title 18 of the United States Code with provisions reflecting Congress' conviction that in addition to assuring the appearance of the defendant at judicial proceedings, the purpose of the bail laws is to prevent defendants from committing further crimes while awaiting trial. S.Rep. No. 225, 98th Cong., 1st Sess. 3, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, at 3185–86. Thus, the 1984 Act provides for: an evaluation of a defendant's threat to the community as a factor in setting pretrial release conditions or in ordering detention, *see* 18 U.S.C. § 3142(b)–(c); the imposition of conditions of release other than financial conditions, 18 U.S.C. § 3142(c); mandatory penalties for crimes committed while on pretrial release, 18 U.S.C. § 3147; and postconviction incarceration pending appeal unless the defendant proves that release would not pose flight or safety risks and that the case is likely to be reversed on appeal, 18 U.S.C. § 3143(b).

The statutory scheme, however, continues to favor release pending trial. Unless a judge or magistrate finds that release on personal recognizance or an unsecured appearance bond will not reasonably assure defendant's appearance or will endanger another person in the community, the de-

---

otherwise made unavailable for forfeiture; and

(ii) the need to preserve the availability of the property through the entry of the requested order outweighs the hardship on any party against whom the order is to be entered:

*Provided, however,* That an order entered pursuant to subparagraph (B) shall be effective for not more than ninety days, unless extended by the court for good cause shown or unless an indictment or information described in subparagraph (A) has been filed.

(2) A temporary restraining order under this subsection may be entered upon application of the United States without notice or opportunity for a hearing when an information or indict-

ment has not yet been filed with respect to the property, if the United States demonstrates that there is probable cause to believe that the property with respect to which the order is sought would, in the event of conviction, be subject to forfeiture under this section and that provision of notice will jeopardize the availability of the property for forfeiture. Such a temporary order shall expire not more than ten days after the date on which it is entered, unless extended for good cause shown or unless the party against whom it is entered consents to an extension for a longer period. A hearing requested concerning an order entered under this paragraph shall be held at the earliest possible time, and prior to the expiration of the temporary order.

fendant must be released pending trial. 18 U.S.C. § 3142(b). Even if release on personal recognizance or unsecured bond will not meet the appearance and safety concerns of the Bail Reform Act, the judge or magistrate must then consider whether any condition or combination of the conditions listed in § 3142(c)(1)(B) will meet the Act's goals. If so, the judicial officer must order the pretrial release of the defendant under the least restrictive set of conditions. 18 U.S.C. § 3142(c)(1)(B). A judge or magistrate is permitted to detain a defendant only if, after a hearing under 18 U.S.C. § 3142(f), the judicial officer determines that none of the conditions will reasonably assure the defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e). Further, unless the defendant is accused of a crime of violence, an offense for which the maximum sentence is life imprisonment or death, one of the enumerated offenses under Title 21, or a felony after having committed two or more of the first three offenses, the government bears the burden of production and persuasion on the issues of risk of flight and danger to the community. *See* 18 U.S.C. § 3142(f).

If defendant is released pending trial and is ultimately convicted of an offense committed while released on bail, 18 U.S.C. § 3147 provides for a mandatory additional consecutive term of not more than ten years imprisonment if the offense is a felony and not more than one year if the offense is a misdemeanor.

After conviction and imposition of a term of imprisonment, there is a presumption of detention pending appeal unless the court finds that the defendant is not likely to flee or pose a danger to the community if released and that the appeal is not for the purpose of delay and raises a substantial question of law or fact. 18 U.S.C. § 3143(b).

### III. *Sentencing Reform Act*

The Sentencing Reform Act of 1984 completely reformed the federal sentencing system by establishing a uniform, determinate sentencing system through the use of sentencing guidelines established by a sentencing commission. 28 U.S.C. § 994. The guidelines provide for a variety of mandatory sentencing ranges—from probation, to fines, to imprisonment—for each offense, depending upon the defendant's criminal history and the circumstances of the offense. If, however, a judge concludes that imposing a sentence within the applicable guideline range would be inappropriate because of the existence of an aggravating or mitigating circumstance that was not adequately considered by the sentencing commission in formulating the guidelines, the judge may depart from the specified guidelines, provided the reasons for doing so are set forth in writing. 18 U.S.C. § 3553(b).

Under Sentencing Guideline § 2E1.1, the offense level for a RICO violation is 19 or the offense level applicable to the underlying racketeering activity, whichever is greater.[4] A level 19 offense, for a first time offender, has a guideline range of 30 to 37 months imprisonment, Sentencing Guideline Ch. 5, Pt. A, and a fine of $6,000, or the pecuniary gain to the defendant, whichever is greater, to $60,000, or three times the gross pecuniary gain to all participants in the offense, whichever is greater. Sentencing Guideline § 5E4.2.

### DISCUSSION

Before addressing the constitutional challenges raised by the plaintiff, the court must make the threshold determination whether a case or controversy exists within the meaning of article III of the Constitution. The case or controversy requirement prohibits federal courts from deciding "abstract, hypothetical or contingent questions." *Alabama State Fed'n of Labor v. McAdory,* 325 U.S. 450, 461, 65 S.Ct. 1384, 1389, 89 L.Ed. 1725 (1945). Thus, "[t]he basic inquiry is whether the 'conflicting

---

**4.** The base offense level for an offense involving obscenity under 18 U.S.C. §§ 1461–1463 is level 6, Sentencing Guideline § 2G3.1(a), but the base offense level may be increased by up to 11 levels depending upon the amount of pecuniary gain.

Sentencing Guideline §§ 2G3.1(b)(1), 2F1.1. Thus, the offense level for a RICO violation in which the underlying offense is an obscenity violation is most likely a level 19.

contentions of the parties ... present a real, substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract.'" *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 1487, 89 L.Ed. 2072 (1945)).

▪ The ripeness doctrine, a derivative of the case or controversy requirement, precludes federal courts from adjudicating a case in which the alleged injury or threat of injury is neither real or immediate and is conjectural or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974). "Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated." *Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 71, 81 S.Ct. 1357, 1397, 6 L.Ed.2d 625 (1961). When the existence of a statute deters the exercise of rights protected by the first amendment, however, it is not necessary for an individual to expose himself to prosecution before the statute may be challenged. *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1215, 39 L.Ed.2d 505 (1974).

The purpose of the ripeness doctrine "is to prevent the courts, through avoidance of permature adjudication, from entangling themselves in abstract disagreements ...", *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), and, instead, ensures that legal issues will be resolved in concrete specific factual contexts. *Communist Party*, 367 U.S. at 72, 81 S.Ct. at 1397. The doctrine also preserves scarce judicial resources by enabling courts to avoid litigation that ultimately may prove to be unnecessary because the threatened injury never occurred.

▪ Each issue raised must be ripe for adjudication. *Id.* at 71, 81 S.Ct. at 1397. Thus, even if each of plaintiff's challenges to the constitutionality of RICO's forfeiture provisions were found to be ripe, it

may be that one or more of the grounds for his challenge to the Bail Reform Act may not be ripe. Further,

A constitutional challenge to a rule as written may constitute a case or controversy appropriate for adjudication in an Article III forum even without a showing of specific or immediate harm. *See, e.g., Dombrowski v. Pfister*, 380 U.S. 479, 486, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965). However, once the rule has been adjudged constitutional in its face there is no presumption of harm.

*Kines v. Day*, 754 F.2d 28, 30–31, (1st Cir.1985). Thus, while the question of the facial validity of a statute may be ripe for adjudication, the question of the constitutionality of the statute as applied may not be ripe.

▪ To the extent that plaintiff has challenged the facial validity of the statutes on the ground that they are overbroad, vague or chill his exercise of free speech, this case presents a ripe controversy since there is "a reasonable threat of prosecution for conduct allegedly protected by the Constitution." *Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625 n. 1, 106 S.Ct. 2718, 2722 n. 1, 91 L.Ed.2d 512 (1986). Plaintiff is the owner of numerous bookstores in which search warrants have been executed and copies of some materials seized. Further, plaintiff has alleged, and defendant has not denied, that several of his employees have apparently received grand jury subpoenas, thus his fear of prosecution is not speculative. Accordingly, plaintiff's constitutional challenges to the facial validity of the statutes at issue, constitute a justiciable case or controversy.

Even if the court determines that an issue is ripe for adjudication, however, the requested relief may be inappropriate. Well-established principles of equity jurisprudence proscribe judicial interference with the enforcement of criminal statutes, even though unconstitutional, *Spielman Motor Sales, Inc. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322 (1935), particularly when the moving party has an adequate remedy at law and will not suffer

irreparable injury if the criminal prosecution is not restrained. *Younger v. Harris,* 401 U.S. 37, 43–44, 91 S.Ct. 746, 750, 27 L.Ed.2d 669 (1971). Equitable relief has been denied in many instances based upon a determination that the opportunity to challenge the constitutionality of a criminal statute as a defense to a criminal prosecution, once initiated, provides an adequate remedy at law. *See e.g., Watson v. Buck,* 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); *Beal v. Missouri Pac. Ry. Co.,* 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Spielman Motor Sales, Inc., supra; Fenner v. Boykin,* 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926).

■ When the threatened prosecution involves first amendment rights, however, "[t]he assumption that defense of a criminal prosecution will generally assure the ample vindication of constitutional rights is unfounded" since "[t]he chilling effect upon the exercise of First Amendment rights may derive from the fact of prosecution, unaffected by the prospects of its success or failure." *Dombrowski v. Pfister,* 380 U.S. 479, 486–87, 85 S.Ct. 1116, 1121, 14 L.Ed.2d 22 (1965). Thus, the Supreme Court has upheld federal injunctions restraining state criminal proceedings, or federal declaratory judgments declaring a state statute unconstitutional, when the threatened prosecution chilled the exercise of protected expression. *See Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); *Doran v. Salem Inn, Inc.,* 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Dombrowski, supra.*

Although *Younger, Dombrowski, Doran,* and *Wooley* involved situations where a federal court was asked to enjoin a *state* prosecution, the broad equitable principles announced in *Younger,* and applied in the subsequent cases, are applicable in situations where a federal court is asked to enjoin enforcement of a federal criminal law. *Juluke v. Hodel,* 811 F.2d 1553, 1557 (D.C.Cir.1987). *See also Los Angeles v. Lyons,* 461 U.S. 95, 135, 103 S.Ct. 1660, 1682, 75 L.Ed.2d 675 (1983) (Marshall, J.,

dissenting) (Where an injunction is not directed against state criminal or quasi-criminal proceedings, the appropriateness of injunctive relief is governed by traditional equitable principles.); *Deaver v. Seymour,* 822 F.2d 66, 69 (D.C.Cir.), *cert. denied,* ⸺ U.S. ⸺, 108 S.Ct. 99, 98 L.Ed.2d 59 (1987); *Freedberg v. United States Dep't of Justice,* 703 F.Supp. 107, 111–12 (D.D.C. 1988). The primary distinction is that federalism concerns temper the exercise of the federal court's equitable power when an injunction restraining state criminal proceedings is sought. *Juluke,* 811 F.2d at 1556.

## I. *Obscenity Laws Violations As A Predicate Offense Under RICO*

Plaintiff contends that RICO, as applied to obscenity, is facially unconstitutional as a violation of the first amendment because it is overbroad and vague, impermissibly chills protected expression, and authorizes an unlawful prior restraint on expression. Plaintiff also contends that RICO's penalty provisions violate the eighth amendment to the Constitution.

### A. Vagueness

■ "[T]he void-for-vagueness doctrine requires that a penal statute define a criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983). "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone" ... than if the boundaries of the forbidden areas were clearly marked' ". *Grayned v. City of Rockford,* 408 U.S. 104, 109, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972) (citations omitted). Thus, if a statute, such as RICO, that abuts upon first amendment freedoms is found to be vague, it has the potential to chill exercise of those freedoms, irreparably harming the individu-

al chilled and providing an appropriate occasion for equitable relief.

In order to establish a RICO violation the government must prove beyond a reasonable doubt: (1) conduct (2) of an enterprise (3) that affects interstate commerce (4) through a pattern (5) of racketeering activity. *United States v. Kopituk*, 690 F.2d 1289, 1323 (11th Cir.1982), *cert. denied*, 463 U.S. 1209, 103 S.Ct. 3542, 77 L.Ed.2d 1391 (1983). Plaintiff contends that RICO, as applied to violations of obscenity laws, is unconstitutionally vague because ascertaining the line between a business that has merely violated an obscenity law and a business that is conducted through a pattern of racketeering activity is impossible since it is unclear how many obscene items must be sold before a business will be found to have *conducted* an enterprise *through* a pattern of racketeering activity.

The RICO Act has been challenged previously as being unconstitutionally vague because the terms "conduct", "participate" and "through" are not defined. *See, e.g., United States v. Stofsky*, 409 F.Supp. 609 (S.D.N.Y.1973). In *Stofsky*, the court rejected the vagueness argument and explained:

> [T]he statute does not define [the] connection by distinguishing between predicate acts which play a major or a minor role, or any role at all, in what might be seen as the usual operation of the enterprise; nor does it require that such acts be in furtherance of the enterprise, as defendants suggest it must.
>
> In this Court's view, the statute fails to state these requirements because Congress did not intend to require them in these terms. The perversion of legitimate business may take many forms. The goals of the enterprise may themselves be perverted. Or the legitimate goals may be continued as a front for unrelated criminal activity. Or the criminal activity may be pursued by some persons in direct conflict with the legitimate goals, pursued by others. Or the criminal activity may, indeed, be utilized to further otherwise legitimate goals. No good reason suggests itself as to why

Congress should want to cover some, but not all of these forms; nor is there any good reason why this Court should construe the statute to do so. It plainly says that it places criminal responsibility on both those who conduct and those who participate, directly or indirectly, in the conduct of the affairs of the enterprise, without regard to what the enterprise was or was not about at the time in question. This may be broad, but it is not vague.

*Id.* at 613.

■ Since *Stofsky*, numerous jurisdictions have attempted to define the scope of the "conduct" requirement. In *United States v. Scotto*, 641 F.2d 47 (2d Cir.1980), *cert. denied*, 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981), the court fashioned a test for determining whether defendant *conducted* an enterprises affairs *through* a pattern of racketeering activity. The proper connection is established when: "(1) one is enabled to commit the predicate offenses solely by virtue of his position in the enterprise, or (2) the predicate offenses are related to the activities of that enterprise. Simply committing predicate acts which are unrelated to the enterprise or one's position within it would be insufficient." *Id.* at 54. *See also Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639*, 839 F.2d 782, 798 (D.C.Cir.1988); *United States v. Cauble*, 706 F.2d 1322, 1333 (5th Cir.1983), *cert. denied*, 465 U.S. 1005, 104 S.Ct. 996, 79 L.Ed.2d 229 (1984); *United States v. Provenzano*, 688 F.2d 194, 200 (3d Cir.), *cert. denied*, 459 U.S. 1071, 103 S.Ct. 492, 74 L.Ed.2d 634 (1982). Further, it is not necessary that the acts of racketeering benefit or are in furtherances of the enterprises. *Provenzano*, 688 F.2d at 200; *United States v. LeRoy*, 687 F.2d 610, 616–17 (2d Cir.1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983); *United States v. Barber*, 668 F.2d 778 (4th Cir.), *cert. denied*, 459 U.S. 829, 103 S.Ct. 66, 74 L.Ed.2d 67 (1982).

■ The cases cited above treat the "conduct" requirement as a question of the relationship or connection between the enterprise and the acts of racketeering activi-

ty.[5] The issue plaintiff has raised, however, is a question of the quantity of acts of racketeering needed in order to find that the enterprise is sufficiently involved in the racketeering activity. That issue, however, is addressed by the "pattern" requirement—which plaintiff has not challenged.[6]

■ Because the "conduct" requirement is concerned only with the relationship between the racketeering activity and the enterprise and because a test has been established to explain the nature of the relationship requirement, plaintiff's claim that RICO is unconstitutionally vague because the "conduct" requirement has not been defined sufficiently must be rejected.

B. Overbreadth

■ A statute is overbroad "if in its reach it prohibits constitutionally protected conduct". *Grayned*, 408 U.S. at 114, 92 S.Ct. at 2302. If RICO is found to be overbroad, plaintiff will have met the prerequisite for equitable relief—demonstrating irreparable harm—since overbroad statutes can deter privileged conduct in the same manner as do vague statutes. *Id.*

Plaintiff alleges that RICO's penalty provisions, as applied to obscenity, are unconstitutionally overbroad since, if convicted, a defendant will be punished, at least in part, for engaging in protected expression. According to plaintiff, by requiring the forfeiture of an individual's entire interest in an enterprise, RICO's penalties reach well beyond assets which are traceable to illegal conduct thereby punishing constitutionally protected expression.

Plaintiff's argument appears to be that if a statute authorizes a penalty for the distribution of obscenity that is greater than the profits attributable to the sale of obscene materials, the penalty is unconstitutionally overbroad and, therefore, facially invalid.

If plaintiff's argument were accepted it would seemingly invalidate any penalty provision that authorizes imposition of a fine in an amount that is not tied to the profits earned from the sale of obscene materials, since the fine may have to be paid in part with profits from the sale of materials protected by the first amendment. The Supreme Court, however, has upheld the constitutionality of many statutes that authorize criminal fines without restricting the amount of the fine to the amount the defendant actually received from the sale of obscene materials. *See e.g., Fort Wayne Books, Inc. v. Indiana,* — U.S. ——, —— & n. 8, 109 S.Ct. 916, 925 & n. 8, 103 L.Ed.2d 34 (1989) (and cases cited therein).

Further, courts have upheld the constitutionality of a penalty provision that permits a judge to consider a business's total profits when determining what level of fine to impose. *Polykoff v. Collins,* 816 F.2d 1326, 1339 (9th Cir.1987) ("We thus decline to adopt appellants' suggestion that a fine provision for obscenity violations is facially overbroad unless it either specifically excludes all resources derived from the sale of protected materials or specifically limits the fine to profits from the sale of unprotected materials."); *511 Detroit Street, Inc. v. Kelley,* 807 F.2d 1293, 1297 (6th Cir.1986) ("[W]e reject the notion that a bookseller may be punished for sales of protected, non-obscene material because a sentencing judge may consider the business's total profits. 'Sentencing judges may, and often do, consider the defendant's ability to pay....' "). It is difficult to see how a fine that is imposed without regard to the amount of profits derived from the sale of obscene materials punishes protected expression any less than forfeiture of an individual's interest in a RICO enterprise.

---

**5.** The absence of any requirement that the acts of racketeering actually benefit the enterprise before the "conduct" element is satisfied makes clear that this element addresses only the relationship between the enterprise and the racketeering activity and not the quantity of acts of racketeering.

**6.** Indeed, plaintiff concedes in his memorandum that "the sale or exhibition of as few as two obscene items in a ten year period could constitute a pattern of racketeering activity under RICO's definitions." Memorandum of Points and Authorities in Support of Motion for Temporary Restraining Order and Preliminary Injunction at 21.

## C. Chilling Effect

Statutes may not be enacted and legal doctrines may not be adopted that, while constitutional in many contexts, have the effect of substantially chilling the exercise of protected expression. *Smith v. California,* 361 U.S. 147, 151, 80 S.Ct. 215, 217, 4 L.Ed.2d 205 (1959). Thus, rather than cutting away improper aspects of a statute by invalidating the unconstitutional applications on a case by case basis, a substantially overbroad statute that threatens the exercise of protected expression will be facially invalidated, *e.g., Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); statutes challenged as being unconstitutionally vague that have a potential to inhibit protected expression will be evaluated under a stricter standard of permissible vagueness, *Hynes v. Mayor and Council of Borough of Oradell,* 425 U.S. 610, 620, 96 S.Ct. 1755, 1760, 48 L.Ed. 2d 243 (1976); and statutes providing criminal penalties for the dissemination of obscene materials will be invalidated if they impose strict liability, *Smith,* 361 U.S. at 152, 80 S.Ct. at 218.

Characterizing the penalties for violations of RICO and federal obscenity laws as "draconian", plaintiff contends that the penalties, combined with the inherent vagueness of laws prohibiting obscenity, are analogous to obscenity statutes imposing strict liability in their tendency to stifle protected speech. According to plaintiff, because the stakes for crossing the vague line between obscene and protected speech have been significantly raised, the risks associated with exercising the constitutional right to speak and write freely on the subject of sex are now so intolerable that all but the most impervious will steer wide of the vague line. To the extent that plaintiff claims the sanctions authorized by RICO chill his exercise of first amendment protected activity he has satisfied the requirement of demonstrating potential irreparable harm.

A similar argument was raised as a defense to a criminal prosecution under RICO in *United States v. Pryba,* 674 F.Supp. 1504 (E.D.Va.1987). The Court in *Pryba* characterized the defendant's challenge as essentially an attack on the vagueness of the underlying obscenity statute. Since the constitutionality of the statute has been well-established, the court concluded that the defendant's assertion that prosecution under RICO unconstitutionally chilled protected speech was unfounded. *Id.* at 1512.

Plaintiff asserts that his argument is distinguishable from that addressed in *Pryba* since his argument is not limited to the contention that the obscenities laws are unconstitutionally vague. Instead, he points to the *Pryba* court's statement that "a dealer need only self-censor obscene matter to avoid RICO's forfeiture penalties", *id.* at 1513 n. 29, and, citing *Smith,* argues that the Supreme Court has held that statutes compelling self-censorship to avoid criminal liability are unconstitutional.

*Smith,* and other Supreme Court cases invalidating statutes that unconstitutionally chill protected expression, have not identified the defect in the statute as one which causes self-censorship of protected expression but, rather, the defect in the statute has been identified as the practical impossibility of engaging in self-censorship to eliminate unprotected expression. In *Smith* the Supreme Court did not reject the statute because it forced booksellers to engage in self-censorship, but because it recognized the unreasonableness of forcing booksellers to become familiar with all books offered for sale in order to avoid punishment for violations of the obscenity laws. Similarly, a vague statute that is invalidated because it chills protected speech has as its vice the impossibility of engaging in successful self-censorship because persons "of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). If, however, the prohibited conduct is sufficiently well-defined, such that individuals may tailor their conduct to avoid criminal sanctions, the level of the penalty should not deter lawful conduct.

Because the level of the penalty should not deter lawful expression when the dis-

tinction between lawful and unlawful expression is well-defined, plaintiff must actually be claiming that the test for obscenity is so vague that individuals cannot determine in advance whether the sale of certain sexually explicit materials is prohibited, and that the penalties, as a result of RICO, have now reached a level which makes the risk associated with selling sexually explicit materials personally unacceptable. Because the federal obscenities laws have already passed constitutional muster, however, *Roth v. United States*, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974),[7] the Court must conclude that plaintiff's constitutional argument is unfounded.

Even if the stiffer RICO penalties provide an additional deterrent to the sale of obscene materials and may even cause:

some cautious booksellers [to] practice self-censorship and remove First Amendment protected materials from their shelves ...[,] deterrence of the sale of obscene materials is a legitimate end of ... anti-obscenity laws, and [Supreme Court] cases have long recognized the practical reality that 'any form of criminal obscenity statute applicable to a bookseller will induce some tendency to self-censorship and have some inhibitory effect on the dissemination of material not obscene. The mere assertion of some possible self-censorship resulting from a statute is not enough to render an anti-obscenity law unconstitutional under [Supreme Court] precedents.

*Fort Wayne Books, Inc. v. Indiana,* — U.S. ——, —— – ——, 109 S.Ct. 916, 925–26, 103 L.Ed.2d 34 (1989) (citations omit-

ted). *See also Polykoff v. Collins,* 816 F.2d 1326, 1340 (9th Cir.1987) ("those who conduct their affairs close to the boundary of proscribed activity necessarily incur some risks.")

**D.  Prior Restraint**

The prior restraint doctrine prohibits governmental restrictions on constitutionally protected expression before publication. Although systems of prior restraint carry a strong presumption of unconstitutionality, *Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963), a prior restraint on the distribution of allegedly obscene material may be sustained if adequate procedural safeguards are provided to reduce the danger of suppressing constitutionally protected speech. *Id.* at 71, 83 S.Ct. at 639. Thus, to avoid running afoul of the first amendment:

the burden of instituting judicial proceedings, and of proving that the material is unprotected, must rest on the censor.... [A]ny restraint prior to judicial review can be imposed only for a specified brief period and only for the purpose of preserving the status quo.... [A] prompt final judicial determination [of obscenity] must be assured.[8]

*Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 560, 95 S.Ct. 1239, 1247, 43 L.Ed.2d 448 (1975). *See also Vance v. Universal Amusement Co.,* 445 U.S. 308, 316–17, 100 S.Ct. 1156, 1161–62, 63 L.Ed.2d 413 (1980) (per curiam); *Freedman v. Maryland,* 380 U.S. 51, 58–59, 85 S.Ct. 734, 738–739, 13 L.Ed.2d 649 (1965). Plaintiff contends that RICO's forfeiture provision, § 1963(a), RICO's provision authorizing courts to enter preconviction restraining orders, § 1963(d), and RICO's provision au-

---

7.  In *Fort Wayne Books, Inc. v. Indiana,* — U.S. ——, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989), the Supreme Court again rejected an invitation to overturn the standard for obscenity established in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), on the ground that it is unconstitutionally vague. — U.S. at ——, 109 S.Ct. at 924.

8.  Although these requirements were formulated in the context of motion picture licensing or censorship, they have been applied in a variety

of contexts. *See Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed. 2d 448 (1975) (attempt to regulate use of a public forum); *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) (seizure of imported materials by Customs agents); *Blount v. Rizzi,* 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971) (postal officials' attempts to control use of mails for commerce in obscene materials).

thorizing courts to order divesture or dissolution, § 1964(a), are facially invalid as prior restraints on presumptively protected speech.

### 1. pretrial restraining orders

The applicability of section 1963(d) is not restricted to RICO prosecutions involving any particular type of racketeering activity. Thus, irrespective of the predicate offenses, § 1963(d) appears to authorize courts to issue orders restraining the transfer, sale, or disposal of forfeitable assets after an *ex parte* hearing. Plaintiff contends that this provision is facially invalid because there is no language expressly excluding RICO prosecutions for violations of the obscenities laws from its reach. Therefore, according to plaintiff, § 1963(d) may be applied in an unconstitutional manner. To the extent he contends that RICO's authorization of pretrial restraining orders constitute an unconstitutional prior restraint, plaintiff has satisfied the requirement of demonstrating potential irreparable harm. The threat posed by a statute that authorizes an unconstitutional prior restraint does not chill speech in the same manner as a vague or overbroad statute regulating speech. Nevertheless, because plaintiff's alienation of forfeitable assets, including materials protected by the first amendment, may be restrained by the court after an *ex parte* hearing, thereby precluding plaintiff from raising his constitutional challenge, plaintiff's exercise of his rights under the first amendment may be restrained as effectively as under a vague or overbroad statute.

An order directing the seizure of expressive materials presumptively protected by the first amendment, without a judicial determination of obscenity in an adversary proceeding, would be unconstitutional. *Fort Wayne Books, Inc. v. Indiana,* — U.S. —, — – —, 109 S.Ct. 916, 927–28, 103 L.Ed.2d 34 (1989). If § 1963(d) compelled a court to issue such an order, it would be facially unconstitutional. *See Vance v. Universal Amusement Co., Inc.,* 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980) (per curiam) (statute requiring court to enjoin the use of any premises for commercial manufacturing, distribution, or exhibition of obscene material is facially invalid). Unlike the statute at issue in *Vance,* however, § 1963(d) does not compel a court to take action to preserve the availability of forfeitable assets, it does not specify the manner in which the Court must act if it concludes that action to preserve the availability of forfeitable assets is warranted, nor does it expressly authorize or require *ex parte* orders directing the seizure of presumptively protected expressive materials.

The mere fact that § 1963 may be applied in a manner that results in an unconstitutional prior restraint does not render that section unconstitutional on its face. In resolving challenges to the facial validity of a federal statute, a guiding principle is that a court must "first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *United States v. Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed.2d 822 (1971) (holding of 6 justices). With that principle in mind, the Supreme Court held that the challenged statute was not facially invalid since, consistent with the legislative intent, it could be construed in a constitutional manner, even though it did not contain explicit time limits of the sort required by *Freedman. Id.* at 370–75, 91 S.Ct. at 1405–07.

Thus, when evaluating the validity of a statute on its face, it must be presumed that courts will apply statutes in a manner consistent with standards required by the Constitution as interpreted by the Supreme Court. *See Grove Press, Inc. v. Kansas,* 304 F.Supp. 383, 390 (D.Kan.1969) (constitutional standards promulgated by the Supreme Court, though not literally present in the statute, are to be implied when the statute is applied.); *see also ABC Books, Inc. v. Benson,* 315 F.Supp. 695, 699 (M.D.Tenn.1970) (when a statute may be constitutionally applied or enforced, that statute must be upheld against a claim of constitutional infirmity on its face.... Whatever the constitutional requirements may be insofar as prior adversary hearings

are concerned, they are implied in the statutes), *vacated on other grounds,* 401 U.S. 988, 91 S.Ct. 1228, 28 L.Ed.2d 525 (1971); *cf. Time, Inc. v. Hill,* 385 U.S. 374, 397, 87 S.Ct. 534, 546, 17 L.Ed.2d 456 (1967) (Even if courts had previously construed a statute in a manner inconsistent with the first amendment, a declaration that the statute was overbroad and, therefore, facially invalid was unwarranted because the Court "confidently expect[ed] that the ... courts will apply the statute consistently with the constitutional command."); *New York v. Ferber,* 458 U.S. 747, 773, 102 S.Ct. 3348, 3363, 73 L.Ed.2d 1113 (1982) (Supreme Court rejected a first amendment overbreadth challenge to the facial validity of a statute "whose legitimate reach dwarfs its arguably impermissible applications" by refusing to "assume that the ... courts will widen the possibly invalid reach of the statute by giving [it] an expansive construction....").

Indeed, district courts have shown sensitivity to the impact of a pretrial restraining order on first amendment interests. *See United States v. Pryba,* 674 F.Supp. 1504 (E.D.Va.1987). In *Pryba,* on the date defendants were indicted under RICO for engaging in a pattern of racketeering activity involving dealing in obscene material, the district court issued an *ex parte* restraining order prohibiting defendant booksellers from selling all videotapes, magazines, and other printed materials. This order, however, was later modified to permit the booksellers to conduct their business as usual, provided they used a specific bank account and did not act to substantially dissipate or diminish the value of the assets identified as forfeitable property. *Id.* at 1508 & n. 16.

An order could be formulated in this case which would ensure that forfeitable assets are not dissipated without restraining defendant from selling the materials he stocks at his stores. Section 1963 permits the courts to set performance bonds to preserve the availability of forfeitable assets. Upon application of the government, a court may require defendant to deposit a performance bond in an amount equivalent to the value of defendant's inventory that would be subject to forfeiture. *See United States v. Spilotro,* 680 F.2d 612, 615 (9th Cir.1982). Such an order would not suppress constitutionally protected speech and, therefore, would not constitute an unconstitutional prior restraint on speech. Because Congress has not mandated a particular means for preserving forfeitable assets prior to trial and conviction, and because § 1963(d)(2) is susceptible of constitutional applications, it is not facially invalid for imposing an unconstitutional prior restraint.

### 2. post conviction forfeiture

Section 1963 is also facially unconstitutional, according to plaintiff, because its mandatory forfeiture provisions are intended "to restrain future speech, through closure and confiscation based upon past unprotected speech", and to operate as an unconstitutional prior restraint on presumptively protected expression by requiring forfeiture of defendants' entire interest in an enterprise which sells materials protected by the first amendment.[9]

While at least one district court has held that RICO's post-conviction forfeiture provision does not operate as an unconstitutional prior restraint, *United States v. Pryba,* 674 F.Supp. 1504 (E.D.Va.1987), the

---

9. Plaintiff analogizes § 1963's sweeping forfeiture provisions to a Minnesota statute found unconstitutional in *Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). In *Near,* the Supreme Court struck down a statute permitting the abatement of a public nuisance, where "public nuisance" was defined to include a business that was "regularly and customarily" in the business of publishing or selling obscene, defamatory, or scandalous newspapers or magazines. *Id.* at 702, 51 S.Ct. at 626. Pursuant to the statute, the district court permanently en-

joined the newspaper from publishing malicious, scandalous, or defamatory matter. *Id.* at 706, 51 S.Ct. at 627. On appeal, the Supreme Court held that the statute constituted an unconstitutional prior restraint because the object of the statute was suppression of any future offending publications rather than punishment in the ordinary sense, and because the availability of contempt proceedings, if publication were resumed, placed the offending publication under effective censorship. *Id.* at 709–12, 51 S.Ct. at 628–29.

Supreme Court has not had the occasion to address the constitutionality of the forfeiture of bookstores and their contents. *Fort Wayne Books, Inc.,* — U.S. at — & n. 11, 109 S.Ct. at 928 & n. 11. This Court finds that the present action for declaratory and injunctive relief also does not present the opportunity to determine whether RICO's forfeiture provision is unconstitutional as a prior restraint when the property to be forfeited consists of a defendant's entire interest in an enterprise which sells materials presumptively protected by the first amendment.

To the extent that plaintiff has challenged RICO's post-conviction forfeiture provisions on the ground that they authorize an unconstitutional prior restraint and violate the eighth amendment, plaintiff is unable to demonstrate the irreparable harm necessary to obtain equitable relief. Due to his opportunity to avoid any injury to his rights under the first amendment by asserting the unconstitutionality of the forfeiture provisions at trial, plaintiff has an adequate remedy at law. Without the threat of irreparable harm and, therefore, the need for injunctive relief there is no compelling reason to breach the cardinal rule governing the federal courts that questions of constitutional law should not be addressed in advance of the necessity of deciding them. *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 502, 105 S.Ct. 2794, 522, 86 L.Ed.2d 394 (1985) (quoting *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960) (quoting *Liverpool, New York & Philadelphia S.S. Co. v. Commissioners of Emigration,* 113 U.S. 33, 39, 5 S.Ct. 352, 355, 28 L.Ed. 899 (1885))).

The above analysis also applies to plaintiff's prior restraint challenge to RICO's civil forfeiture provision.

## II. *Bail Reform Act*

▮▮▮▮ Plaintiff challenges the pretrial and detention pending appeal provisions of the Bail Reform Act, as applied to obsceni-

ty offenses, in a number of ways. First, the plaintiff anticipates that the government would file multiple obscenity-related prosecutions in order to obtain a succession of pretrial detention orders for the sole purpose of restraining or chilling the plaintiff's free speech. Second, since release pending appeal cannot be obtained unless the appeal raises a substantial question of law or fact likely to result in reversal, 18 U.S.C. § 3143(b)(2), plaintiffs contends that persons convicted of obscenity offenses will apparently be automatically precluded from release pending appeal, thereby restraining or chilling free speech. Third, plaintiff argues that the provision in 18 U.S.C. § 3147, requiring mandatory additional jail sentences for persons convicted of an obscenity offense or other felony while released on bail, constitutes a "severe and draconian punishment" which chills and restrains free speech. Finally, the plaintiff contends that the provisions violate the fifth and eighth amendments.

The brief response to each of these assertions is that they have been raised prematurely. Plaintiff's allegations are not an attack on the Bail Reform Act's facial validity but are challenges to the constitutionality of hypothetical applications of the Bail Reform Act. Although the threat of a RICO prosecution is sufficiently immediate to enable plaintiff to challenge RICO on first amendment grounds, the threat of multiple obscenity related prosecutions for the sole purpose of restraining or chilling plaintiff's speech is purely speculative. Further, because plaintiff has not been indicted, much less convicted, the possibility that he will be found to be a danger to the community or pose a risk of flight and, therefore, be denied release pending appeal is conjectural. Finally, because plaintiff may never be indicted or released on bail, the provision requiring a mandatory additional jail sentence for persons convicted of an offense while released on bail, 18 U.S.C. § 3147, may never be applicable.[10]

---

**10.** The case or controversy requirement is in part based upon the need for concrete issues which have been vigorously pursued and narrowly focused by a party who has been, or will be, injured by the challenged act or statute. In this case, it is questionable whether plaintiff is serious about his fears or claims of harm since he made no attempt to brief or argue the issues

Even if the claimed threats to plaintiff's first amendment rights were sufficiently immediate to present a justiciable controversy, an injunction against the application of the challenged sections of the Bail Reform Act or an order declaring those sections unconstitutional is unnecessary at this time since plaintiff has not demonstrated the threat of irreparable injury. Plaintiff may adequately protect his constitutional rights by raising his challenges during the detention hearing or at sentencing. Accordingly, the government's motion to dismiss plaintiff's request for an order enjoining application of the Bail Reform Act must be granted.

### III. *Sentencing Reform Act of 1984*

Plaintiff assails the Sentencing Reform Act of 1984 on the ground that it establishes:

> punishments far too severe and disproportionate when imposed against those whose only alleged violation of law is one or more obscenity-related offenses. The inevitable affect of such severe statutory sanctions which forbid the release of *any* convicted defendant on probation has a severely chilling impact on the exercise of constitutionally protected expression by Plaintiff who cannot determine the obscenity of materials in advance due to the lack of an available statutory procedure for doing so and due to the 'dim and uncertain line' that separates obscenity from constitutionally protected speech.

Complaint at ¶ 26.

Plaintiff also challenges the provisions imposing a fine on criminal defendants on the ground that he:

> fears that Defendant Meese will argue for and obtain fines which are not limited to the monetary gain any defendant may achieve through the sale, etc. of materials judicially determined to be *obscene,* but rather, which are based on the mone-

he raised concerning the constitutionality of the Bail Reform Act.

tary gain of the entire business in which defendant might be involved....

Complaint at ¶ 25.[11]

Plaintiff's claim that the Sentencing Reform Act provides for penalties for violations of the obscenities laws that are so severe and disproportionate that they have a chilling impact on his exercise of protected expression is analogous to his challenge to RICO's forfeiture provisions. For the reasons stated in response to that challenge, the Court must also reject his claim that the penalties for obscenities law violations set forth in the Sentencing Reform Act impermissibly chill his exercise of protected expression.

In resolving plaintiff's overbreadth challenge to RICO, this Court has also previously addressed plaintiff's assertion that the term "monetary gain to the defendant" —used in the Sentencing Reform Act as one of the upper limits on permissible fines —cannot be interpreted more broadly than monetary gain derived exclusively from the commercial exploitation of materials proven to be obscene in a final judicial determination.

The Act's fine provision does not *require* courts to order a fine in an amount equal to the pecuniary gain from the offense. Instead, in determining the amount of a fine to be imposed under former 18 U.S.C. § 3622(a), courts were required to consider among other things "(3) the defendant's income, earning capacity, and financial resources; ... (7) the need to deprive the defendant of illegally obtained gains from the offense; ... [and] (8) whether the defendant can pass on to consumers or other persons the expense of the fine." 18 U.S. C.A. § 3622(a) (1985). Under the Sentencing Guidelines, the court in determining the amount of the fine, is required to consider the need: to promote respect for the law, to impose a punishment that will reflect the seriousness of the offense; and to afford adequate deterrence. Sentencing Guidelines § 5E4.2(d)(1).

**11.** The Court also questions whether plaintiff is serious about his fears or claims of harm caused by the Sentencing Reform Act since he has made no attempt to brief or argue these issues.

Thus, the same reasons for rejecting plaintiff's overbreadth challenge to RICO's forfeiture provision apply here. First, the fine provisions of the Sentencing Reform Act do not require that the fine be based on profits derived from the sale of both protected and unprotected materials nor do they single out first amendment activity for differential treatment. Further, the fine provisions permit a consideration of the defendant's resources generally, which is a legitimate factor in the sentencing determination. Accordingly, the Court cannot conclude that the fine provisions of the Sentencing Reform Act are facially overbroad merely because they do not specifically exclude or limit the amount of the fine to the profits from the sale of unprotected materials. *See Polykoff v. Collins,* 816 F.2d 1326, 1339 (9th Cir.1987); *511 Detroit Street, Inc. v. Kelley,* 807 F.2d 1293, 1297, 1299 (6th Cir.1986).

Even if plaintiff's claim on the merits were successful, equitable relief would be inappropriate at this time since there is no threat of irreparable harm. There is no evidence of a direct injury at this time and the occurrence of the alleged injury in the future is merely speculative. Plaintiff has not alleged that the feared application chills his exercise of protected speech nor has he been indicted, much less convicted, at this time. If the feared application of the fine provision were contemplated, the Presentence Investigation Report would place plaintiff on notice of such intent and plaintiff would have the opportunity to challenge the application of the fine provision prior to sentencing. Accordingly, the government's motion to dismiss plaintiff's request for an order enjoining application of the Sentencing Reform Act will be granted.

For the reasons stated above, IT IS HEREBY ORDERED that defendant's motion for summary judgment is granted as to each of plaintiff's claims for relief.

LET JUDGMENT BE ENTERED ACCORDINGLY.